UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
STEPHANIE A. GALLAGHER
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7780
Fax (410) 962-1812

May 17, 2013

LETTER TO COUNSEL:

    RE:    *Louis Earl Bruette v. Commissioner, Social Security Administration*;
              Civil No. SAG-12-1972

Dear Counsel:

On July 2, 2012, the Plaintiff, Louis Earl Bruette, petitioned this Court to review the Social Security Administration's final decision to deny his claims for Disability Insurance Benefits and Supplemental Security Income. (ECF No. 1). I have considered the parties' cross-motions for summary judgment, and Mr. Bruette's response. (ECF Nos. 14, 15, 18). I find that no hearing is necessary. Local Rule 105.6 (D. Md. 2011). This Court must uphold the decision of the agency if it is supported by substantial evidence and if the agency employed proper legal standards. 42 U.S.C. §§ 405(g), 1383(c)(3); *see Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (superseded by statute on other grounds). Under that standard, I will grant the Commissioner's motion and deny Plaintiff's motion. This letter explains my rationale.

Mr. Bruette filed his claims for benefits on August 23, 2006, alleging a disability onset date of July 1, 2004. (Tr. 87-94). His claims were denied initially on November 28, 2006, and on reconsideration on January 22, 2007. (Tr. 64-67, 69-70). A hearing was held on June 8, 2007 before an Administrative Law Judge ("ALJ"). (Tr. 11-48). On April 25, 2008, the ALJ determined that Mr. Bruette was not disabled during the relevant time frame. (Tr. 443). The Appeals Council ("AC") denied a request for review. (Tr. 1-8). On January 13, 2011, the case was remanded by consent by the United States District Court. (Tr. 531-33). An additional hearing was held on September 21, 2011. (Tr. 484-530). Following the hearing, on December 21, 2011, the ALJ again determined that Mr. Bruette was not disabled. (Tr. 443-62). The AC denied Mr. Bruette's request for review, (Tr. 422-25), so the ALJ's December, 2011 decision constitutes the final, reviewable decision of the agency.

The ALJ found that Mr. Bruette suffered from the severe impairments of: disorders of the back, status post left knee surgeries, hypertension, and obesity. (Tr. 445). Despite these impairments, the ALJ determined that Mr. Bruette retained the residual functional capacity ("RFC") to:

> perform sedentary work as defined in 20 CFR 416.967(a) except he can only occasionally climb and stoop and needs to stand for a few minutes every hour.

(Tr. 449). After considering the testimony of a vocational expert ("VE"), the ALJ determined that Mr. Bruette could perform jobs that exist in significant numbers in the national economy, and that he was therefore not disabled during the relevant time frame. (Tr. 461-62).

Mr. Bruette presents two arguments on appeal: (1) that the ALJ failed to properly analyze whether he met or equaled Listing 1.04, and (2) that the ALJ erred by giving lesser weight to his treating physicians' opinions. Each argument lacks merit.

Mr. Bruette's first primary argument has a number of subparts. First, he argues the ALJ summarily concluded that Mr. Bruette did not meet a Listing, without offering support from the record. Pl. Mot. 24-26. I disagree. Despite the general nature of the ALJ's language describing his evaluation of the Listings, I find that the ALJ provided substantial evidence to support his step three findings. The ALJ first noted that the state agency physicians had concluded that Mr. Bruette's impairments did not meet or equal any Listing. (Tr. 449). Second, the ALJ noted that the records submitted after the state agency review did not warrant a different determination. *Id.* The ALJ specifically found that there was no evidence to support a finding that Mr. Bruette could not ambulate "without the use of a hand-held assistive device[] that limits the functioning of both upper extremities." *Id.* Mr. Bruette's argument is that Listing 1.04C applies. However, without an inability to ambulate, that cannot be the case. Finally, the ALJ found that Listings 1.04A and 1.04B were not met. *Id.* Moreover, the ALJ thoroughly scrutinized the objective medical evidence pertaining to Mr. Bruette's back and joint disorders in his step two and RFC determinations. He accurately assessed that Mr. Bruette complained of the disorders inconsistently, and that doctors had prescribed conservative treatment with prescription and over-the-counter drugs. (Tr. 446-48, 454-57). I cannot find that the ALJ erred in his analysis.

Second, Mr. Bruette asserts that the ALJ made a serious misstatement in noting that none of the state agency physicians "identified medical signs or findings that meet or medically equal the requirements of *any section* of Appendix 1." (Pl. Mot. 25-26, Tr. 449) (emphasis added). Mr. Bruette argues that state agency medical consultant, Dr. Cyrus Pezeshki, found that he had "difficulty with ambulation" and noted that he "us[ed] a cane on the right, limping on the left[,]" and thus contradicted the ALJ by finding Mr. Bruette suffered from an inability to walk. (Tr. 247). Under the Listings, an inability to ambulate effectively is defined "generally as having insufficient lower extremity functioning to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." The statute provides examples of ineffective ambulation, such as "the inability to walk without the use of a walker [or] two crutches or two canes." Pl. Mot. 29; 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(b)(2). Mr. Bruette used a single cane for many years prior to his alleged disability onset date, and does not allege that he ever used two canes at once. Further, in arguing that he meets the definition, Mr. Bruette points only to his own statements alleging extreme difficulty with walking, which the ALJ found not fully credible. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00(b)(1) (internal citations omitted). Dr. Pezeshki noted that Mr. Bruette did not take medication to relieve his complaints of pain, had good range of motion in all joints except the

left knee, and did not complain of any pain during the range of movement tests. (Tr. 247). He concluded that Mr. Bruette was capable of performing activity that did not require squatting or kneeling. *Id.* Further, even had Mr. Bruette established an inability to ambulate effectively, he would meet just one requirement of several under Listings 1.02 and 1.04. Nowhere does Mr. Bruette offer support that he meets all of the requirements of either section. Finally, he appears to argue that where the ALJ stated no "section" had been met, he actually meant none of the "requirements" had been met. I disagree. Each section of the Listings in question has one or more requirements. The ALJ accurately stated that Mr. Bruette's impairments did not meet or equal all of the requirements of any of the sections, i.e. Listings, under Appendix 1.

Third, Mr. Bruette argues that the ALJ erred by omitting discussion of two diagnostic tests in his discussion of the Listings. After the state agency evaluations were completed, Mr. Bruette underwent an August, 2007 x-ray that showed "oasteoarthritis with narrowing of the L4 through S1 disc intraspace and neural foramina." (Tr. 336). Mr. Bruette argues that the 2007 x-ray[1] results constitute evidence of spinal cord narrowing required under Listing 1.04. Listing 1.04A requires evidence of nerve root compression characterized by specific signs of pain, limitation of motion of the spine, motor loss accompanied by sensory or reflex loss, and positive straight-leg raising tests. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04A. The ALJ specifically discussed the x-ray in his RFC analysis, (Tr. 448), and expressly confirmed that "the record [did] not document the necessary findings" to meet Listing 1.04A. (Tr. 449). I agree with the Commissioner that the August, 2007 x-ray is consistent with prior imaging results that were reviewed by the state agency consultants who found the Listings not met, and that it did not demonstrate a worsening of Mr. Bruette's condition. Def. Mot. 15 (citing Tr. 213 (a January, 2005 x-ray showing narrowing of the L1-2 and L4-5 disc levels and mild narrowing of the L2-3 levels) and Tr. 243 (a March, 2005 MRI showing narrowing at L1-2, neural foraminal narrowing at L3-4, and narrowing at L4-5)). Further, Mr. Bruette does not point to medical records that demonstrate the other physical manifestations required by Listing 1.04A.

Additionally, Mr. Bruette argues that the ALJ is contradicted by a March, 2005 MRI demonstrating "[m]ultilevel degenerative changes with a moderate spinal stenosis at L4-5 and bilateral foraminal stenosis at L4-5 and L5-S1." (Tr. 243). Listing 1.04C requires *both* lumbar spinal stenonsis resulting in pain in the buttocks or lower limbs *and* an inability to ambulate effectively. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.04C. The ALJ discussed the results of the March, 2005 MRI in his RFC determination. (Tr. 447). As discussed above, the ALJ found no evidence demonstrating Mr. Bruette had the requisite inability to ambulate effectively. Therefore, the ALJ's determination that Mr. Bruette did not meet the requirements of Listing 1.04C was supported by substantial evidence.

Mr. Bruette also argues that the ALJ failed to properly interrelate the impact of his obesity in the Listing analysis. The ALJ acknowledged that obesity resulting in an inability to ambulate effectively may substitute for a major dysfunction of a joint under SSR 02-01p. (Tr.

---

[1] Mr. Bruette identifies the imaging test as an MRI, but it is in actuality an x-ray. (Tr. 335-36).

449). The ALJ considered whether Mr. Bruette's obesity met or equaled a Listing, but found that it did not because, as discussed above, Mr. Bruette did not suffer from an inability to walk effectively. *Id.* The ALJ discussed Mr. Bruette's obesity throughout the opinion. *See, e.g.,* (Tr. 447) (noting that Dr. Pezeshki opined that most of Mr. Bruette's issues stemmed from his weight); (Tr. 456) (reporting that Mr. Bruette's back pain improved after a 60-pound weight loss). Further, the claimant carries the burden of showing how obesity affects his ability to perform work-related functions. *See Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (finding that the applicant bears the burden of production and of proof during the first four steps of the inquiry). Because Mr. Bruette has not identified how his obesity limited him to a greater extent than the ALJ found, he has failed to carry that burden. *See Brown v. Astrue*, No. JKS-09-1792, 2011 WL 129006, at *2 (D. Md. Jan. 14, 2011) ("having identified no evidence to suggest that his obesity caused greater limitations than the ALJ assigned, Brown has shown no basis for remand.")

Mr. Bruette further contends that the ALJ was required to consult a medical expert to determine whether a Listing was met. Regulations provide ALJs with broad discretion to determine whether medical experts are needed at hearings. See, e.g., HALLEX I-2-5-34; SSR 96-6p, 1996 WL 374180 at *3-*4. ALJs are required to obtain a medical expert's opinion when: (1) the AC or a court so orders; (2) to evaluate and interpret background medical test data; or (3) when the ALJ is considering a finding that the claimant's impairment(s) medically equals a medical listing. HALLEX I-2-5-34. None of the circumstances that require appointment of a medical expert are present in this case. Neither the AC nor Judge Grimm ordered the ALJ to appoint a medical expert on remand; the ALJ was not presented with background medical test data that required interpretation; and the ALJ did not consider a finding that Mr. Bruette's impairments equaled a medical listing. While the ALJ certainly had the authority to appoint a medical expert to appear for the remand hearing, he was by no means required to do so. The ALJ's decision regarding the appointment of a medical expert was well within his discretion and will not be disturbed.

Mr. Bruette's second primary argument is that the ALJ erred in his assignment of lesser weight to the opinions of treating physicians Drs. Savinder Julka and George Pirpiris. Although the opinion of a treating physician can be entitled to controlling weight, such an opinion is not entitled to such weight if it is inconsistent with the other substantial evidence of record. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). Moreover, the ALJ is not required to give controlling weight to a treating physician's opinion on the ultimate issue of disability. 20 C.F.R. § 404.1527(d)(2); SSR 96-5p. Mr. Bruette takes issue with the ALJ's inclusion of language providing general reasons that an ALJ might discount a treating physician's opinion. However, the ALJ provided a number of specific reasons for assigning lesser weight to both physicians' opinions. Dr. Pirpiris's opinion was from 1996, eight years prior to the alleged disability onset date, and his treatment notes, indicating years without treatment for back and knee impairments, were inconsistent with his opinion that Mr. Bruette was disabled. (Tr. 306, 458). Dr. Julka's opinion was discounted because, *inter alia*, his treatment notes and prescribed conservative treatments were inconsistent with a finding of total disability. I find no error in the ALJ's

assignment of lesser weight to those opinions.[2]

In his reply, Mr. Bruette raises the argument that the ALJ erred because although he assigned "significant weight" to Dr. Pezeshki's opinion, his RFC determination and hypotheticals to the VE did not reflect the restrictions recommended by Dr. Pezeshki. His argument fails. First, while the ALJ assigned Dr. Pezeshki's opinion significant weight, he did not give it controlling weight. Dr. Pezeshki opined that Mr. Bruette was capable of activity that did not require squatting and kneeling. (Tr. 247). Ultimately, after reviewing the entire record and the opinions of other physicians, the ALJ found that Mr. Bruette was capable of sedentary work with only occasional climbing and stooping, and that he needed to stand for a few minutes after every hour of sitting. (Tr. 449). His RFC properly reflects a consideration of the entire record and the varying physician opinions that were relied upon. Second, Mr. Bruette argues that the ALJ did not incorporate any of Dr. Pezeshki's findings in the hypotheticals posed to the VE. The ALJ first posed a hypothetical based upon the RFC findings of Dr. Moore. (Tr. 223-30, 524-25). The ALJ then asked the VE what jobs a person was capable of who could only stand or walk for a maximum of two hours in an eight-hour workday. (Tr. 525). The VE responded with the following sedentary positions: a food and beverage clerk, an optical assembler, and a pari-mutuel ticket cashier.[3] *Id.* A review of the *Dictionary of Occupational Titles* shows that for all of the positions, stooping and kneeling are "not present." DICOT 209.567-014, 713.687-018, 211.467-018. Thus, even if I were to find the ALJ erred by not explicitly telling the VE to eliminate positions that involved stooping, squatting, or kneeling based upon the recommended restriction of Dr. Pezeshki, any such error would be harmless.

For the reasons set forth herein, Plaintiff's motion for summary judgment (ECF No. 14) will be DENIED and the Commissioner's motion for summary judgment (ECF No. 15) will be GRANTED. The Clerk is directed to CLOSE this case.

---

[2] I agree with Mr. Bruette that one portion of the ALJ's analysis is inappropriate. With respect to both doctors, the ALJ expressed concern that treating physicians write opinions to please their clients who seek disability and "avoid unnecessary doctor/patient tension." (Tr. 458-59). In the absence of other evidence of such pandering in a particular case, consideration of that alleged pattern is improper. However, the ALJ enumerated seven other valid reasons for rejecting each doctor's opinion, (Tr. 457-58, 458-60). Any error is therefore harmless.

[3] A pari-mutuel ticket cashier is actually classified as light work. However, I can find no cause for remand in the VE's misclassification of this position. The Baltimore area has 1,700 food and beverage clerk and 790 optical assembler positions. (Tr. 525). The number of those positions establishes a "significant number" to justify a finding of "not disabled." *Cf. Lawler v. Astrue*, No. 09-1614, 2011 WL 1485280, at *5 (D. Md. Apr. 19, 2011) (finding that the fact that there were only 75-100 jobs in the region where plaintiff lives "does not undermine the ALJ's conclusion that plaintiff is capable of performing work that exists in significant numbers in the national economy."); *Hicks v. Califano*, 600 F.2d 1048, 1051 n. 2 (4th Cir. 1979) (declining to determine that 110 regional jobs would be an insignificant number).

Despite the informal nature of this letter, it should be flagged as an opinion. An implementing Order follows.

Sincerely yours,

/s/

Stephanie A. Gallagher
United States Magistrate Judge